UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AHC HOLDINGS, INC.,

       Plaintiff,

v.

MSU HEALTH CARE, INC. and
ROGER JANSEN,

       Defendants.

Case No. 1:25-cv-00503-PLM-SJB
Hon. Paul L. Maloney
Mag. Judge Sally J. Berens

---

# BRIEF IN SUPPORT OF MSU HEALTH CARE, INC.'S MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................iii

I.    INTRODUCTION ....................................................................................................... 1

II.    STATEMENT OF FACTS .......................................................................................... 1

A.    THE ALLEGATIONS OF PLAINTIFF'S COMPLAINT.................................................... 1

    1.   The Parties and Background ............................................................................ 2

    2.   Plaintiff's Allegations of a Kickback Scheme by Jansen to Destroy Assure ............. 2

B.    PLAINTIFF'S BREACH OF THE TOLLING AGREEMENT ............................................. 5

III.    ARGUMENT ................................................................................................................ 7

A.    STANDARD OF REVIEW ............................................................................................ 7

B.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST MSU HCI UNDER RULE 12(B)(6) BECAUSE PLAINTIFF FAILED TO STATE A CLAIM AGAINST MSU HCI ON WHICH RELIEF CAN BE GRANTED. ........................................................... 8

    1.   The Court Should Dismiss Plaintiff's Claims Against MSU HCI Because Plaintiff Alleges Acts Done By Jansen For Personal Gain, For Which MSU HCI Cannot Be Held Vicariously Liable. ................................................................. 8

    2.   The Court Should Dismiss Plaintiff's Claims Against MSU HCI Because They Are Barred by The Statute of Limitations. ...................................................... 13

        a.   Plaintiff Cannot Enforce the Tolling Agreement Due to the Substantial Breach of that Agreement. ................................................................. 13

        b.   Because the Tolling Agreement Is Not Enforceable, Plaintiff's Claims Are Time-Barred. ............................................................................. 16

            i.   Plaintiff's Defamations Claims Are Time-Barred. ....................................... 16

            ii.   Plaintiff's Tortious Interference Claims Are Also Time-Barred. .................. 17

    3.   The Court Should Dismiss Plaintiff's Defamation Claim Against MSU HCI Under Rule 12(b)(6) Because the Complaint Is Not Pled with Specificity. .............. 19

    4.   The Court Should Dismiss Plaintiff's Claim of Defamation *Per Se* Against MSU HCI Because the Facts Pled Do Not Impute the Commission of a Crime or A Lack of Chastity........................................................................21

i

5. The Court Should Dismiss Plaintiff's Claims Against MSU HCI With Respect to Jansen's Alleged Statements to HC9 Because Plaintiff Consented to The Publication. ................................................................. 23

6. The Court Should Dismiss Plaintiff's Tortious Interference Claim Against MSU HCI For Various Independent, Additional Reasons .......................... 24

   a.  ELLKAY: Plaintiff Lacks Standing ..................................................... 25

   b.  Maveron and ELLKAY: Failure to Plead Knowledge by Defendant Jansen .............................................................................................. 26

   c.  Maveron: Plaintiff Does Not Allege a Valid Expectancy ................... 27

7. MSU HCI Adopts Arguments Advanced by Jansen in His Motion .......................... 28

CONCLUSION ................................................................................................................ 28

LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE ....................................... 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Able Demolition v. Pontiac*, 739 N.W.2d 696 (Mich. Ct. App. 2007)..........................................15

*Adkins v. Annapolis Hosp.*, 323 N.W.2d 482 (Mich. Ct. App. 1982), aff'd, 360 N.W.2d 150 (Mich. 1984) ...................................................................................................................17

*Alpha Cap. Mgmt., Inc. v. Rentenbach*, 792 N.W.2d 344 (Mich. Ct. App. 2010)......................14

*Al-Shimmari v. Detroit Med. Ctr.*, 731 N.W.2d 29 (Mich. 2007)................................................28

*Anderson v. Janson Supermarkets, LLC*, 32 Misc. 3d 1218(A), 934 N.Y.S.2d 32 (Sup. Ct. 2011) .....................................................................................................................................12

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) ..........................7, 10

*Barrow v. Church*, No. 3:15-cv-341, 2016 WL 2619754 (S.D. Ohio May 5, 2016)...................10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007) ................7

*Bhan v. Battle Creek Health Sys.*, 579 F. App'x 438 (6th Cir. 2014) ....................................19, 20

*Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943 (W.D. Mich. 2003)........................................................................................................................17, 25

*Campos v Oldsmobile Div, Gen Motors Corp*, 71 Mich. App. 23, 246 N.W.2d 352 (1976)..............................................................................................................................................19

*Cedroni Assocs. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1 (Mich. 2012).......................................................................................................28

*Cetera v. Mileto*, 995 N.W.2d 838 (Mich. Ct. App. 2022) .........................................................22

*Coates v Milner Hotels*, 18 N.W.2d 389 (Mich. 1945)................................................................18

*Coles v. Dearborn Mid-W. Co.,* No. 13-14450, 2015 WL 163829 (E.D. Mich. Jan. 13, 2015) ..................................................................................................................................21, 23

*Coles v. Dearborn Midwest Co.,* No. 13-14450, 2014 WL 7530433 (E.D. Mich. Sept. 17, 2014) ...............................................................................................................................21

*Couch v. Schultz,* 193 Mich App 292; 483 NW2d 684 (1992) ...................................................23

*Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125 (W.D. Mich. 2019) aff'd, 831 F. App'x 161 (6th Cir. 2020).........................................................................26

*Daneshvar v. Kipke*, 266 F. Supp. 3d 1031 (E.D. Mich. 2017) ..................................................22

*Davis v. Med-1 Occupational Health Servs.*, No. 1:23-426, 2023 WL 5533498 (W.D. Mich. Aug. 3, 2023) report and recommendation approved, No. 23-426, 2023 WL 5529782 (W.D. Mich. Aug. 28, 2023) ....................................................................... 19

*Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679 (D. Md. 2000) ............................... 15

*Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311 (Mich. 1949) ............................................ 15

*Empey v. Grand Trunk Western R. Co.*, 869 F. 2d 293 (6th Cir. 1989) ...................................... 10

*Exxon Mobil Corp. v. Fenelon*, 76 F. App'x 581 (6th Cir. 2003) ............................................... 15

*First Pub Corp v Parfet*, 246 Mich. App. 182, 631 N.W.2d 785 (2001) .................................... 28

*Fox v. Kitch, Drutchas, Wagner, Valitutti & Sherbrook P.C.*, No. 07-10240, 2008 WL 11626313 (E.D. Mich. Feb. 6, 2008) ...................................................................................... 19

*Frohriep v. Flanagan,* 754 N.W.2d 912 (Mich Ct. App. 2008), 763 N.W.2d 279 (Mich. 2009) ............................................................................................................................................. 8

*Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140 (4th Cir. 2018) ......................... 12

*Geib v. Amoco Oil Co.*, 29 F.3d 1050 (6th Cir. 1994), *remanded on other grounds,* No 92-2129 (6th Cir Feb 14, 1995) ........................................................................................... 28

*Ghanam v. Does*, 303 Mich. App. 522, 845 N.W.2d 128 (2014) ............................................... 20

*Gizzi v. Marinov*, 79 F.3d 1148 (Table), 1996 WL 107126 (6th Cir. 1996) ............................... 15

*Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297 (Mich. Ct. App. 1991) ................ 21

*Green v. Shell Oil Co.*, 450 N.W.2d 50 (Mich. Ct. App. 1989) .................................................... 8

*Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531 (6th Cir. 2012) ......................................... 7

*Heike v. Guevara*, No. 09-10427, 2010 WL 538300 (E.D. Mich. Feb. 9, 2010), *aff'd,* 519 F. App'x 911 (6th Cir. 2013) ................................................................................................ 24

*Hollowell v. Career Decisions, Inc.,* 100 Mich. App. 561, 298 N.W.2d 915 (1980) ................. 24

*Holtzlander v. Brownell*, 453 N.W.2d 295 (Mich. Ct. App. 1990) ............................................. 15

*In re Est. of Rayment*, No. 244252, 2004 WL 516557 (Mich. Ct. App. Mar. 16, 2004) ............ 18

*Jaafar v. Sabon*, No. 229992, 2002 WL 1482605 (Mich. Ct. App. July 9, 2002) ....................... 23

*Jones v. Kent Cnty.*, No. 20-36, 2020 WL 7327576 (W.D. Mich. Aug. 14, 2020), *report and recommendation adopted,* No. 20-36, 2020 WL 6498912 (W.D. Mich. Nov. 5, 2020) ........................................................................................................................................... 10

*Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580 (6th Cir. 2005) ............................. 21

*Keener v. Nat'l Nurses Org. Comm.*, 615 F. App'x 246 (6th Cir. 2015)....................................... 13

*Knight Enterprises v. RPF Oil Co.,* 829 N.W.2d 345 (Mich. Ct. App. 2013).............................. 8

*Kubik v. Brown*, 979 F. Supp. 539 (W.D. Mich. 1997) ............................................................... 10

*Linebaugh v. Sheraton Mich. Corp.*, 497 NW2d 585 (Mich. Ct. App. 1993) .............................. 9

*Lockhart v. Gainwell Techs. LLC*, No. 23-12335, 2024 WL 3909558 (E.D. Mich. Aug. 22, 2024) ................................................................................................................................... 13

*Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459 (6th Cir. 2013)........................................... 13

*Marks One Car Rental, Inc. v. Auto Club Grp.* Ins. Co., 761 F. App'x 516 (6th Cir. 2019) ...................................................................................................................................... 22

*Martin v. Jones*, 4 N.W.2d 686 (Mich. 1942)................................................................................. 8

*McClements v. Ford Motor Co.,* 702 N.W.2d 166 (Mich. 2005) ................................................... 8

*Nehls v. Hillsdale Coll.*, 65 F. App'x 984 (6th Cir. 2003) .......................................................... 22

*Nicholson v. Ticketmaster*, 42 F. App'x 696 (6th Cir. 2002) ...................................................... 26

*Norris v. Stanley*, 73 F. 4th 431 (6th Cir. 2023) ......................................................................... 10

*Oesterle v. Wallace,* 272 Mich.App. 260, 725 N.W.2d 470 (2006) ............................................ 23

*Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 08-12247, 2010 WL 742580 (E.D. Mich. Feb. 26, 2010) .......................................................................................... 20

*PCA Minerals, LLC v. Merit Energy Co*., 725 F. App'x 342 (6th Cir. 2018)............................. 17

*Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc*., 461 F. Supp. 3d 531 (E.D. Mich. 2020) .................................................................................................................... 14

*Romero v. Buhimschi*, 396 F. App'x 224 (6th Cir. 2010) ............................................................ 23

*Rouch v. Enquiere & News,* 487 N.W.2d 205 (Mich. 1992) ........................................................ 19

*Ryniewicz v. Clarivate Analytics*, 803 F. App'x. 858 (6th Cir. 2020)................................ 9, 12, 20

*Salinas v. Genesys Health Sys*, 688 N.W.2d 112 (Mich. Ct. App. 2004)..................................... 8

*Salomon v. Citigroup Inc.*, 123 A.D.3d 517, 999 N.Y.S.2d 21 (2014)....................................... 12

*Schechet v. Kesten,* 3 Mich. App 126, 141 N.W.2d 641 (1966)................................................... 24

*Simmons v. Apex Drug Stores, Inc.*, 506 N.W.2d 562 (Mich. Ct. App. 1993) ........................... 17

*Simmons v. Sunoco Inc.*, No. 246837, 2004 WL 981520 (Mich. Ct. App. May 6, 2004) ............ 8

*Stephens v. Worden Ins. Agency, LLC*, 859 N.W.2d 723 (Mich. Ct. App. 2014) ....................... 17

*Vandenheede v. Vecchio*, 541 F. App'x 577 (6th Cir. 2013) ........................................ 13

*Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d 827 (E.D. Mich. 2012) .................................... 27

*Visions Auto Glass, Inc. v. Safelite Sols., Inc.,* No. 10-00791, 2012 WL 13184337
   (W.D. Mich. July 13, 2012) ................................................................ 25, 26

*Wershe v. City of Detroit,* 112 F. 4th 357 (6th Cir. 2024) ........................................ 13

*Zsigo v. Hurley Medical Ctr.*, 716 N.W.2d 220 (Mich. 2006) ...................................... 8

**Statutes**

M.C.L. § 600.5805(11) ....................................................................... 7, 16

**Other Authorities**

15 Williston on Contracts § 43:31 (4th ed.) ................................................ 15

17A Am.Jur.2d Contracts § 685 ............................................................ 15

50 Am Jur 2d, Libel & Slander, § 272 ..................................................... 23

Restatement (Second) Agency, § 219(2)(d) ................................................ 8

**Rules**

L. Civ. R. 7.2(b)(i) ........................................................................ 30

Rule 12(b)(6) .......................................................................... passim

Rule 56(c) ................................................................................. 13

# I.    INTRODUCTION

MSU Health Care, Inc. ("MSU HCI") seeks dismissal of this case, in its entirety. The claims against MSU HCI, which rest on the allegedly false statements of a MSU HCI employee (Roger Jansen ("Jansen")) accused of making those statements as retribution for Plaintiff's failure to pay him "kickbacks," suffer from many fatal flaws. Rule 12(b)(6) requires dismissal of Plaintiff's claims for many independent reasons: (1) the claims seek relief from MSU HCI for statements allegedly made by Jansen that could only be characterized as actions taken outside the scope of his employment; (2) the claims are barred by the statute of limitations; (3) Plaintiff fails to plead with specificity the alleged defamatory words used, to whom they were spoken, and/or when they were made; (4) the claim of defamation *per se* does not allege that Jansen's statement imputed the commission of a crime or a lack of chastity; (5) the Complaint pleads facts demonstrating Plaintiff consented to Jansen's alleged statements to HC9 Ventures, LLC, thereby meriting the defense of absolute privilege; (6) Plaintiff's claim of tortious interference with business relations lacks the factual allegations necessary to sustain it; and (7) the grounds advanced for dismissal of Jansen apply equally to MSU HCI.

# II.    STATEMENT OF FACTS

## A.  The Allegations of Plaintiff's Complaint

This Section A in the Statement of Facts summarizes the factual allegations in the Complaint.[1]

---

[1] The recitation of the Statement of Facts in this section rests on the allegations in the Complaint and are not in any way admissions or acknowledgments of those allegations.

### 1.  The Parties and Background

Plaintiff AHC, Inc. is the current name for the entity previously known as Assure Health Corporation ("Plaintiff" or "Assure"). ECF No. 1, PageID.2, ¶ 3. One of Assure's wholly owned subsidiaries, Assure Health Ventures, LLC, entered into a joint venture relationship with Higi Health Holdings, LLC (the "JV"), to provide remote patient monitoring services. *Id.;* ECF No. 1, PageID.3, ¶ 10. That JV operated under the name of Assure Health Care Everyday, LLC. *Id.*

The JV (not Plaintiff) contracted with Defendant MSU HCI to provide those services. ECF No. 1, PageID.2, ¶ 3. Although it is not stated in the Complaint, Defendant MSU HCI is a Michigan non-profit corporation. It is an academic health system comprised of teaching faculty from Michigan State University's Colleges of Human Medicine, Osteopathic Medicine, and Nursing, many of whom are actively engaged in teaching, research and direct patient care.[2] As a charitable 501(c)(3) corporation, MSU HCI's missions include healing the sick and poor, and promoting, supporting, and engaging in other charitable, educational, and/or scientific activities.[3] Jansen served as MSU HCI's Chief Innovation & Digital Health Officer. ECF No. 1, PageID.2, ¶ 5.

### 2.  Plaintiff's Allegations of a Kickback Scheme by Jansen to Destroy Assure

In a preamble to and throughout the Complaint, Plaintiff alleges that Jansen sought to destroy Assure "in retaliation for Assure refusing to pay kickbacks" to him. ECF No. 1, PageID.1, ¶ 1. Plaintiff claims that Jansen's demands date back to the summer of 2021 when Jansen requested compensation from Assure to "help facilitate ongoing commercial and contractual relationships between [MSU HCI] and Assure and to further use his position at [MSU HCI] to generate

---

[2] See https://healthcare.msu.edu/about/hc-facts.aspx

[3] See Articles of Incorporation available at
https://mibusinessregistry.lara.state.mi.us/search/business

additional partnerships and business for Assure." *Id*. at PageID.3-4, ¶ 13. These alleged entreaties by Jansen continued with text messages and emails from him. *Id*. at PageID.4-5, ¶¶ 14-18. Plaintiff claims that it stopped engaging with Jansen about such compensation when it concluded that his requests were "illegal," and that Jansen's conduct made Assure believe it had managed to maintain a good relationship with him. *Id*. at PageID.5, ¶¶20-24.

However, Plaintiff claims that, behind the scenes, Jansen was "so incensed that Assure had rebuffed his pay-to-play scheme that he set out to destroy Assure." ECF No. 1, PageID.5-6, ¶ 25. Plaintiff states that, approximately two years later,"[b]eginning in April 2023, Jansen began making demonstrably false and defamatory claims to venture capital firms and other key players in the industry to sabotage Assure's Series A fundraising round and destroy its business relationships, reputation, and prospects for growth." *Id*. at PageID.6, ¶ 26.

Plaintiff alleges that it signed a term sheet with venture capital firm HC9 Ventures I, L.P. ("HC9") under which HC9 would lead an investment in Plaintiff for millions of dollars to grow Plaintiff's business. ECF No. 1, PageID.6, ¶¶ 26-30. Plaintiff asked Jansen to provide a client reference for it to HC9. *Id*. at PageID.6, ¶ 30.

According to the Complaint, Jansen's supposed efforts at sabotaging Assure began with calls Jansen had, in connection with the requested reference, with one or more unidentified representatives of HC9 "on or around April 14, 2023." ECF No. 1, PageID.7, ¶ 32. On that date, Plaintiff asserts that Jansen made "false claims" about Assure and that he repeated them "later the very same day." *Id*. The Complaint does not allege <u>who</u> Jansen spoke with in either call.

On April 27, 2023, according to the Complaint, an unnamed "Assure investor who had a relationship with Jansen reached out to him to inquire about Jansen's lies to HC9." ECF No. 1, PageID.7, ¶ 34. Plaintiff alleges that Jansen backtracked on his "false accusations" and attempted

to explain them away. Then, at this unnamed investor's "insistence," Jansen "offered" the idea of a "corrective call" with HC9. *Id.* Plaintiff claims further that, "[d]uring that call, Jansen stated that he had checked with [MSU HCI's] compliance team and admitted that there were no compliance issues with Assure, but he doubled down on the lie that [MSU HCI] was going to imminently terminate Assure's contract." *Id.* It is unclear from the Complaint whether the "call," during which Jansen allegedly "doubled down on the lie" that MSU HCI was going to imminently terminate the contract, occurred on April 27 when the unnamed investor reached out to Jansen, or instead during a later, corrective call that Jansen allegedly promised to make.

In addition to failing to identify the individuals with whom Jansen allegedly spoke, neither paragraph in which Plaintiff alleges Jansen made false claims states what words Jansen used. Instead, in an earlier paragraph, Plaintiff generically states that "during at least three separate calls with HC9, Jansen falsely claimed that [MSU HCI] was going to imminently terminate its contract with Assure because Assure was committing widespread Medicare fraud and had major compliance issues." ECF No. 1, PageID.7, ¶ 31.

Plaintiff asserts that Jansen also bad-mouthed it to an unnamed person associated with Maveron, LLC, which Plaintiff claims demonstrated interest in supporting Plaintiff. ECF No. 1, PageID.7-8, ¶¶ 36-37. Plaintiff states that, when a Maveron partner reached out to Jansen, he "falsely claimed that Assure was committing Medicare fraud and had major compliance issues." ECF No. 1, PageID.8, ¶ 38. Again, Plaintiff fails to identify with whom Jansen spoke or what words he used. Plaintiff also fails to identify the date on which the alleged call occurred.

Finally, Plaintiff believes that Jansen harmed a business partnership it had with ELLKAY, LLC, which provides interoperability technology services. ECF No. 1, PageID.8-9, ¶¶ 41-47. The Complaint states that, sometime in or after July 2023, ELLKAY informed Plaintiff that it chose

not to work with Plaintiff toward a contract. *Id.*, PageID.9, ¶¶ 45-46). "Eventually, ELLKAY's VP of Interoperability returned Assure's COO's call, and informed him that ELLKAY chose not to continue working towards a contract for the continuation of services because an employee of the Company had informed ELLKAY that the Company was going to imminently terminate its partnership with Assure because it had major compliance concerns." *Id.* at ¶ 46. Again, Plaintiff does not state who Jansen spoke with, or when or what he said. In fact, the allegation about what Jansen allegedly said rests on "information and belief." *Id.* at ¶¶ 41, 47.

These same accusations are the basis for Plaintiff's claim of tortious interference with business relations. Plaintiff claims that Jansen's alleged comments managed to ruin its reputation, and relationships with HC9, Assure, and ELLKAY. ECF No. 1, PageID.13-14, ¶¶ 64-70.

## B.  PLAINTIFF'S BREACH OF THE TOLLING AGREEMENT

In this Section of the Statement of Facts, MSU HCI describes events surrounding Plaintiff's breach of the Tolling Agreement.[4]

In April 2024, Plaintiff proposed a Tolling Agreement with MSU HCI and Jansen, which the parties subsequently executed. (Ex. 1) (the "Tolling Agreement" or "Agreement"). Under the Agreement, which was dated and effective April 5, 2024, the limitations period for any claims would be tolled from that date through October 1, 2024. (*Id.* at pp. 1-2, ¶¶ 1 & 3).

The Tolling Agreement also stated that there would be no litigation by one of the parties against the other during its term:

> Non-Litigation During Tolling Period: During the Tolling Period, the Parties shall
> not institute litigation against the other Party asserting any claim.

---

[4] As discussed in the Argument section below, the documents related to the Tolling Agreement are properly used in support of a Rule 12(b)(6) Motion.

(Ex. 1, p. 2, ¶ 4). Importantly, for purposes of the Agreement, a "Party" included Plaintiff, Assure Health Care Everyday, LLC, MSU HCI, and Jansen. (*Id.* at p. 1, introductory paragraph, and n.1). Both Assure Health Care Everyday and Assure Health Corporation were signatories to the Tolling Agreement. (*Id.* at p. 3).

Nevertheless, on July 11, 2024, during the term of the Tolling Agreement and in violation of the No-Litigation clause, Assure Health Care Everyday, LLC, filed an action in this Court against MSU HCI for allegedly unpaid invoices. (Complaint, 1:24-cv-00713 PageID.1). That pleading was later amended, on October 11, 2024, to substitute Assure Health Corporation (also a party to the Tolling Agreement). (Amended Complaint, 1:24-cv-00713 PageID.126). The lawsuit sought relief on the theory that MSU HCI owed the plaintiff for unpaid invoices. *Id.* MSU HCI refers to that lawsuit below as the "*Assure Health Care Everyday*" matter.

Several months after the parties appeared for a scheduling conference, MSU HCI filed a motion to show cause why the matter should not be dismissed for the plaintiff's failure to prosecute. The Court entered an order to show cause. (Order to Show Cause, 1:24-cv-00713 PageID.234). Lead counsel for Assure Health Care Everyday moved to withdraw from the case and stated that he had been unable to reach his client. (Order, 1:24-cv-00713 PageID.238). The Court denied the motion. *Id.* Plaintiff's counsel then moved for an extension of time to respond, stating that he had since heard from his client. (Order for No Progress Dismissal, 1:24-cv-00713 PageID.245). The Court denied that Motion. *Id.* Local counsel for the plaintiff did not file a response to the Court's Order. The Court then dismissed the *Assure Health Care Everyday* matter for lack of progress. *Id.*

After the initial Complaint was filed in that matter, MSU HCI and Assure, as well as Assure Health Care Everyday, entered into two new Tolling Agreements. (Ex. 2, Sep. 27, 2024, Tolling

Agreement; Ex. 3, Jan. 23, 2025, Tolling Agreement). Importantly, because Plaintiff's defamation claim rests on statements allegedly made in April 2023 and July 2023, the one-year statute of limitations for defamation claims, M.C.L. § 600.5805(11), expired naturally at the latest in July 2024. Only *after* that time passed did the parties enter into the second and third Tolling Agreements. However, in the second and third Tolling Agreements, the parties explicitly acknowledged that stale claims *were not revived*:

> <u>No Revival</u>: Except as expressly provided herein, nothing in this Agreement shall affect any defense available to any Party as of the Effective Date of this Agreement, and this Agreement shall not be deemed to revive any claim that is or was already barred on the Effective Date. Nothing in this Agreement, or in the circumstances which gave rise to this Agreement, shall be construed as an acknowledgement by any Party that any claim has or has not been barred, or is about to be barred, by the statute of limitations, laches, or other defense based on the lapse of time.

(*Id.* at p. 1, ¶ 2).

## III.   <u>ARGUMENT</u>

### A.  STANDARD OF REVIEW

To survive a Motion to Dismiss under Rule 12(b)(6), the plaintiff must "allege[] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis, Tenn*., 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)). The nonmoving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.,* 550 U.S. at 555. A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009).

**B. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS AGAINST MSU HCI UNDER RULE 12(B)(6) BECAUSE PLAINTIFF FAILED TO STATE A CLAIM AGAINST MSU HCI ON WHICH RELIEF CAN BE GRANTED.**

**1. The Court Should Dismiss Plaintiff's Claims Against MSU HCI Because Plaintiff Alleges Acts Done By Jansen For Personal Gain, For Which MSU HCI Cannot Be Held Vicariously Liable.**

Plaintiff seeks relief from MSU HCI for alleged defamation and tortious interference with business relations. These are the same claims Plaintiff brought against Jansen. Both claims are intentional torts. *See Knight Enterprises v. RPF Oil Co.,* 829 N.W.2d 345, 348 (Mich. Ct. App. 2013) ("By definition, tortious interference with a contract is an intentional tort."); *see also Frohriep v. Flanagan,* 754 N.W.2d 912, 916 & 919 (Mich Ct. App. 2008) (acknowledging defamation as an intentional tort), rev'd on other grounds, 763 N.W.2d 279 (Mich. 2009).[5]

Under Michigan law, an employer generally is not vicariously liable for an intentional tort that is "committed by its employee acting outside the scope of employment." *McClements v. Ford Motor Co.,* 702 N.W.2d 166 (Mich. 2005) (quoting *Martin v. Jones,* 4 N.W.2d 686 (Mich. 1942). Where an employee is attempting to accomplish his <u>own purpose</u>, he is not acting in the scope of employment and the employer is not vicariously liable. *See Green v. Shell Oil Co.*, 450 N.W.2d 50 (Mich. Ct. App. 1989) (abrogated on other grounds by *Simmons v. Sunoco Inc*., No. 246837, 2004 WL 981520 (Mich. Ct. App. May 6, 2004); *see also Salinas v. Genesys Health Sys*, 688 N.W.2d 112 (Mich. Ct. App. 2004).[6]

---

[5] MSU HCI takes no position in this Motion on whether Jansen acted out of personal gain. This Motion seeks relief based on Plaintiff's pleading.

[6] The Michigan Supreme Court has squarely rejected the application of Restatement (Second) Agency, § 219(2)(d), which recognized that a principal could be liable if the agent is aided in the accomplishment of a tort by the existence of the agency relationship. *Zsigo v. Hurley Medical Ctr.*, 716 N.W.2d 220, 226-229 (Mich. 2006) ("We decline to adopt the exception, which would create employer liability for the torts of an employee acting outside the scope of his or her employment when the employee is aided in accomplishing the tort by the existence of the agency relationship").

This limitation on vicarious liability for intentional torts is not merely theoretical; it carries real consequences at the pleading stage. To survive a motion to dismiss, a plaintiff must allege facts—not conclusions—showing that the employee acted within the scope of employment. A bare assertion that the conduct was job-related does not suffice. Specifically, the Sixth Circuit's decision in *Ryniewicz v. Clarivate Analytics* illustrates how courts apply this principle when evaluating a defamation claim under the purview of a Rule 12(b)(6) motion. 803 F. App'x. 858, 869 (6th Cir. 2020).

In *Ryniewicz*, the plaintiff sought to impose vicarious liability on the defendant for allegedly defamatory remarks made by its employee. 803 F. App'x. at 861-862. But the complaint failed to allege that those employees were acting within the scope of their employment—only that they made statements the plaintiff viewed as harmful. The court found no facts suggesting the employees were supervisors, engaged in the company's investigation, or were speaking in furtherance of any business purpose. *Id*. at 869-870. On the contrary, the allegations indicated conduct driven by personal motives, not employer directives. *Id*. at 869. Because Michigan law limits vicarious liability to acts performed within the scope of employment, the Sixth Circuit held that the plaintiff's conclusory assertions could not sustain the claim under the federal standards of facial plausibility. *See Ryniewicz*, 803 F. App'x. at 869 (citing *Linebaugh v. Sheraton Mich. Corp.*, 497 NW2d 585 (Mich. Ct. App. 1993)). The takeaway from *Ryniewicz* is clear: when the facts plead that the employee acted to serve a personal end, federal courts will not allow a vicarious liability theory to proceed past the pleading stage.

Here, Plaintiff asserts the legal conclusion that Jansen's actions were taken "within the scope of his employment" with MSU HCI.[7] However, in ruling on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (internal quotation marks omitted); accord *Norris v. Stanley*, 73 F. 4th 431, 435 (6th Cir. 2023) (noting that a court "need not accept as true legal conclusions or unwarranted factual inferences.") (internal quotation marks omitted). In fact, a legal conclusion that is <u>contradicted</u> by the factual allegations should not be accepted as true. *See, e.g.*, *Kubik v. Brown*, 979 F. Supp. 539, 546 (W.D. Mich. 1997) ("conclusory allegations are not acceptable where no facts are alleged to support that conclusion or where the allegations are contradicted by the facts."); *see also Jones v. Kent Cnty.*, No. 20-36, 2020 WL 7327576, at *8 (W.D. Mich. Aug. 14, 2020) (Behrens, M.J.), *report and recommendation adopted,* No. 20-36, 2020 WL 6498912 (W.D. Mich. Nov. 5, 2020) (rejecting the legal conclusion in plaintiff's complaint that was unsupported by facts and contradicted by the allegations).

Here, the factual allegations of the Complaint plainly contradict Plaintiff's conclusory assertion that Jansen's actions were undertaken in the scope of his employment with MSU HCI. Specifically, Plaintiff avers that Jansen's allegedly defamatory statements were motivated by his personal goal to retaliate against Plaintiff for its refusal to pay "kickbacks." Paragraph 1 states that "Jansen was so incensed that Assure refused to join the pay-to-play scheme that he intentionally sabotaged Assure's Series A fundraising round and tanked Assure by lying to venture capital firms and other key players in the healthcare industry, falsely telling them that the Company was about

---

[7] *Barrow v. Church*, No. 3:15-cv-341, 2016 WL 2619754, at *3 (S.D. Ohio May 5, 2016) ("the allegation that Ms. Moore created the betting pool in the course and scope of her employment is a mere pleading of a legal conclusion without enough factual context to make the claim plausible"); *Empey v. Grand Trunk Western R. Co.*, 869 F. 2d 293, 294 (6th Cir. 1989) (conclusion that the plaintiff was acting within the scope of his employment when injured was a legal conclusion).

to terminate Assure's contract because Assure had committed widespread Medicare fraud and had major compliance issues." ECF No. 1, PageID.1. Plaintiff further asserts that "Jansen used his position at the Company to pressure Assure into paying him kickbacks," and that "[w]hile Assure saw its introduction to Jansen as an opportunity to expand and provide its innovative monitoring services to a larger group of patients, Jansen saw it as <u>an opportunity for his own personal gain</u>." ECF No. 1, PageID.3-4, ¶¶ 12-13 (emphasis added). Plaintiff claims that Jansen, shortly after discussions about a possible contractual relationship with HCI, "approached Assure's CEO with an offer to help facilitate ongoing commercial and contractual relationships between the Company and Assure and to further use his position at the Company to generate additional partnerships and business for Assure. In exchange, Jansen <u>demanded that Assure compensate him with cash, commission, and equity in Assure</u>." *Id.* at ¶ 13 (emphasis added). Plaintiff states that Jansen put in writing his request for the "kickback" with a demand for specific compensation. ECF No. 1, PageID.4, ¶ 14. Plaintiff adds that Jansen sought a "*quid pro quo*" for the value he added and that, "unless Assure paid him off," he would not help to facilitate business between Plaintiff and HCI. *Id.* at ¶¶ 17-18. Plaintiff calls Jansen's demands "illegal," and states that Jansen was "so incensed that Assure had rebuffed his pay-to-play scheme that he set out to destroy Assure." ECF No. 1, PageID.5-6, ¶¶ 20, 25. The allegedly defamatory statements, Plaintiff claims, were out of "malice and ill will toward Assure, born from Assure's having rebuffed his pay-to-play demands." ECF No. 1, PageID.12, ¶¶ 60-61.

The foregoing factual allegations plainly contradict the bare legal conclusion that Jansen acted within the scope of his employment in defaming Plaintiff and tortiously interfering with its alleged business relationships. The allegations, when taken as true, are that Jansen slandered and/or sabotaged Plaintiff's business out of a <u>personal</u> motivation to retaliate against Plaintiff's supposed

refusal to pay "kickbacks" or participate in a "pay-to-play" scheme. Even if Jansen acted as Plaintiff alleges, there is no claim that such action benefited MSU HCI.[8]

In short, Plaintiff's allegations are that Jansen acted <u>outside</u> the scope of his employment. Because of such allegations, despite Plaintiff's unsupported legal conclusion that Jansen acted within the scope of his employment, MSU HCI cannot be held vicariously liable for those actions. *See, e.g.*, *Ryniewicz*, 803 F. App'x. at 869 (affirming dismissal of defamation claim where plaintiff failed to plead facts showing employee acted within the scope of employment, as required for vicarious liability under Michigan law); *Anderson v. Janson Supermarkets, LLC*, 32 Misc. 3d 1218(A), 934 N.Y.S.2d 32 (Sup. Ct. 2011) ("Here, the plaintiff's allegations reveal the personal motivation of [the employees] in making the allegedly defamatory statements and that their statements could not have been reasonably expected by [the employer]. This is true despite the conclusory allegations that [the employees]were acting in the scope of their employment."); *Salomon v. Citigroup Inc.*, 123 A.D.3d 517, 518, 999 N.Y.S.2d 21, 23 (2014) ("Plaintiff's cause of action for conversion, predicated upon a vicarious liability theory, was properly dismissed where the factual allegations indicated that the theft was in furtherance of the [employee's] own personal gain, not in furtherance of [the employer's] business."); *Garnett v. Remedi Seniorcare of Virginia, LLC*, 892 F.3d 140, 143-147 (4th Cir. 2018) (affirming dismissal of claim seeking to hold employer vicariously liable for the alleged defamatory statements of the plaintiff's co-worker where the complaint failed to plead facts, and instead pleaded only conclusions, that the employee was acting within the scope and course of his employment). Therefore, Plaintiff's claims against MSU HCI should be dismissed in their entirety for failure to state a claim on which relief can be granted.

---

[8] Nor, as the present lawsuit shows, can any such argument reasonably be made.

### 2.  The Court Should Dismiss Plaintiff's Claims Against MSU HCI Because They Are Barred by The Statute of Limitations.

The Court may dismiss a claim under Rule 12(b)(6) where "the allegations in the complaint affirmatively show that the claim is time-barred." *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (internal quotations and citation omitted).

In this Section of the Argument (and the Statement of Facts), MSU HCI relies on a few documents that are properly before the Court on a Rule 12(b)(6) Motion. Specifically, MSU HCI relies on the Tolling Agreement, which is referenced in the Complaint itself, ECF No. 1, PageID.12, ¶ 56, and certain public records filed in another case in this Court. See e.g., *Keener v. Nat'l Nurses Org. Comm.*, 615 F. App'x 246, 247 (6th Cir. 2015) (Courts may ". . . consider . . . public records, and defense exhibits referenced in the complaint" under a 12(b)(6) analysis.)*; Vandenheede v. Vecchio*, 541 F. App'x 577, 579 (6th Cir. 2013) ("In determining the sufficiency of the complaint, we confine our review to the pleadings, exhibits attached to or addressed in the complaint, documents included with a motion to dismiss if referenced in the complaint, and public records.").[9]

### a.  Plaintiff Cannot Enforce the Tolling Agreement Due to the Substantial Breach of that Agreement.

Plaintiff's material breach of the April 2024 Tolling Agreement, by the initiation and prosecution of a lawsuit against MSU HCI in the *Assure Health Care Everyday* matter, discharged MSU HCI's obligation to agree that the limitations period was tolled.

---

[9] To the extent the Court disagrees, it may convert this section of MSU HCI's argument as a request for summary judgment under Rule 56(c). See e.g., *Wershe v. City of Detroit*, 112 F. 4th 357, 372 (6th Cir. 2024); *Lockhart v. Gainwell Techs. LLC*, No. 23-12335, 2024 WL 3909558, at *2 (E.D. Mich. Aug. 22, 2024) (converting only that portion of the Rule 12(b)(6) motion relating to a particular claim to one for summary judgment).

The April 5, 2024, Tolling Agreement (valid through October 1, 2024) prohibited litigation by any party against the other during its term. (Ex. 1, p. 2, ¶ 4). Plaintiff then breached that Tolling Agreement through initiation of the *Assure Health Care Everyday* lawsuit on July 11, 2024, and then again by prosecuting it in its own name through an Amended Complaint. (1:24-cv-00713 PageID.1; 1:24-cv-00713 PageID.126).

The initial Complaint was filed right in the middle of the Tolling Agreement's term that was set to expire on October 1, 2024. (Ex. 1, Tolling Agreement, ¶ 3). The parties entered into a new tolling agreement effective on September 27, 2024, which expressly stated that it did not revive any claims that were already stale. (Ex. 2, Tolling Agreement of September 27, 2024, ¶ 2) (providing that "this Agreement shall not be deemed to revive any claim that is or was already barred on the Effective Date").[10] The same language was included in the third Tolling Agreement (Ex. 3, Tolling Agreement of January 23, 2025, ¶ 2). Ultimately, after a motion to show cause filed by MSU HCI, three orders, and efforts to delay dismissal, the Court dismissed the *Assure Health Care Everyday* lawsuit for lack of progress. (Order for No Progress Dismissal, 1:24-cv-00713 PageID.245).

Under Michigan law, a substantial breach by one party excuses performance by the other party. *Radiance Aluminum Fence, Inc. v. Marquis Metal Material, Inc*., 461 F. Supp. 3d 531, 542 (E.D. Mich. 2020). Accord: *Alpha Cap. Mgmt., Inc. v. Rentenbac*h, 792 N.W.2d 344, 360-361 (Mich. Ct. App. 2010) (when the plaintiff company missed its deadline to pay a former shareholder under their buyout agreement, this "justified [the former shareholder's] breach or disregard of the covenant not to compete"); *Gizzi v. Marinov*, 79 F.3d 1148 (Table), 1996 WL 107126, *4 (6th Cir.

---

[10] In each Tolling Agreement, the introductory clause stated that the "Effective Date" was the date it was signed.

1996) ("Once a party has materially breached a contract, the other party's performance obligations are excused") (citing *Ehlinger v. Bodi Lake Lumber Co.*, 36 N.W.2d 311 (Mich. 1949)). Indeed, this is black letter law. *See, e.g.*, 15 Williston on Contracts § 43:31 (4th ed.) ("The modern view, embodied in the Restatement Second, recognizes that either an uncured, material failure of performance by one party, or a repudiation of its contractual obligations, discharges the remaining duties of performance otherwise owed by the other party"); 17A Am.Jur.2d Contracts § 685 ("[I]n the case of bilateral contracts, if either party commits a material breach of the contract, the other party should be excused from the obligation to perform further.").

The breach of the Tolling Agreement's no-litigation clause, by Assure and Assure Health Care Everyday, were material breaches. In determining whether a breach is material, the court should consider whether the nonbreaching party obtained the benefit it reasonably expected to receive. *See Holtzlander v. Brownell*, 453 N.W.2d 295, 298 (Mich. Ct. App. 1990); *see also Able Demolition v. Pontiac*, 739 N.W.2d 696, 701-702 (Mich. Ct. App. 2007).

Of course, the principal reason a putative defendant enters into a tolling agreement is to avoid litigation. MSU HCI had no other primary reason to agree to stop the clock from ticking on Plaintiff's claims. Indeed, the recitals in the Tolling Agreement expressly stated that "the Parties desire to preserve the status quo to explore whether a resolution is possible <u>prior to litigation</u>." (Ex. 1, p. 1) (emphasis added). *See, e.g., Exxon Mobil Corp. v. Fenelon*, 76 F. App'x 581, 593 (6th Cir. 2003) (reciting Texas law and noting that "The purpose of a standstill agreement is normally to maintain the status quo and temporarily suspend or stop all aspects of a suit.") (internal quotations and citations omitted); *Derrickson v. Circuit City Stores, Inc.*, 84 F. Supp. 2d 679, 685-686 (D. Md. 2000) ("the purpose of the tolling agreement was to allow for settlement discussions, and it

defies reason that Defendant would have contemplated settlement with the class while allowing individual claims to go forward").

Plaintiff's breach of the Tolling Agreement, through initiation and prosecution of the *Assure Health Care Everyday* matter against MSU HCI, discharged MSU HCI's obligation to adhere to any obligations in that Agreement. As explained below, Plaintiff's claims are consequently barred by the applicable statute of limitations.

### b. Because the Tolling Agreement Is Not Enforceable, Plaintiff's Claims Are Time-Barred.

### i. Plaintiff's Defamations Claims Are Time-Barred.

Count I of the Complaint seeks relief for alleged defamation. The statute of limitations in Michigan for defamation is one year. MCL 600.5805(11). Plaintiff's Complaint states that Jansen made his allegedly defamatory statements "[b]eginning in April 2023" and it recites as the latest alleged defamatory statement an unspecified date in July 2023. ECF No. 1, PageID.5, ¶ 25, PageID.14, ¶ 67. Because Plaintiff's defamation claim rests on statements allegedly made in April 2023 and July 2023, the one-year statute of limitations for defamation claims, M.C.L. § 600.5805(11), expired naturally at the latest in July 2024.[11]

Plaintiff did not bring this action until May 1, 2025. Because Plaintiff breached the Tolling Agreement, and the statute of limitations expired naturally before that date, Plaintiff's defamation claims are time-barred.

---

[11] Only after that time passed did the parties enter into the second and third Tolling Agreements. (Ex. 2; Ex. 3). However, those agreements did not revive stale claims. (*Id.* at p. 1, ¶ 2).

ii.    **Plaintiff's Tortious Interference Claims Are Also Time-Barred.**

Plaintiff's claim in Count II, for tortious interference, fares no better.[12] Michigan law prohibits "a party from avoiding an applicable statute of limitations through artful drafting." *Stephens v. Worden Ins. Agency, LLC*, 859 N.W.2d 723, 729 (Mich. Ct. App. 2014) (quotation marks and citation omitted). Thus, when determining which statute of limitations applies, Michigan courts are not bound by a party's label for the claim and will instead "consider the gravamen of the suit based on a reading of the complaint as a whole." *Id.* (quotation marks and citation omitted). The type of interest allegedly harmed is the focal point in determining which limitation period controls. *Adkins v. Annapolis Hosp.*, 323 N.W.2d 482, 485 (Mich. Ct. App. 1982), aff'd, 360 N.W.2d 150 (Mich. 1984) (the plaintiff's negligence claim relating to misdiagnosis was truly a medical malpractice claim); *Simmons v. Apex Drug Stores, Inc.*, 506 N.W.2d 562, 564 (Mich. Ct. App. 1993) (and noting that "[a] plaintiff may not evade the appropriate limitation period by artful drafting").

In *PCA Minerals, LLC v. Merit Energy Co.*, 725 F. App'x 342, 349 (6th Cir. 2018), the appellate court directed the district court on remand to determine whether the plaintiff's unjust-enrichment claim, ordinarily subject to a six-year limitations period, "is simply a recasting of the conversion claim," which was subject only to a three-year statute of limitations.[13] The court held that "Michigan courts do, indeed, conduct a gravamen analysis when a plaintiff attempts to avoid the applicable statute of limitations by ignoring the true nature of the wrong alleged and recasting it as a claim subject to a longer statute." *Id.* at 348; *see also In re Est. of Rayment*, No. 244252,

---

[12] The ordinary limitations period for tortious interference claims is three years. *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 953-954 (W.D. Mich. 2003).
[13] The district court did not subsequently decide the issue.

2004 WL 516557, at *1 (Mich. Ct. App. Mar. 16, 2004) (claim that the defendant failed to implement and require compliance with sound guardianship practices sounded in malpractice rather than negligence, and the statute of limitations applicable to malpractice claims therefore barred the plaintiff's claim alleging negligence); *Coates v Milner Hotels*, 18 N.W.2d 389 (Mich. 1945) (where the plaintiff claimed personal injury in breach of an implied contract, the limitations period was three years, rather than six for breach of contract).

Here, the interests allegedly harmed are identical and there can be no doubt that Plaintiff's claim of tortious interference simply recasts Plaintiff's defamation claim. *Compare* ECF No. 1, PageID.13, ¶ 63 to PageID.14, ¶ 70. In <u>both</u> Plaintiff's defamation claim (paragraph 63) and its tortious interference claim (paragraph 70), Plaintiff claims that Jansen's defamatory statements caused Assure to lose: (a) "millions of dollars in investments," (b) "$48.5 million in enterprise value," (c) business with ELLKAY, which provided interoperability services, and (d) "tens of millions in reputational harm and out-of-pocket expenses." *Id.*

Plaintiff not only pleads the same harm in both counts, but the Complaint also relies on Jansen's allegedly defamatory statements to plead the tortious conduct for its tortious interference claim. See ECF No. 1, PageID.14, ¶ 69 ("Jansen <u>made his false claims</u> about Assure to HC9, Maveron, and ELLKAY with the intent to interfere with Assure's relationships with those companies") (emphasis added). Plaintiff also recites in both counts the same <u>purpose</u> to cause the harm. In Plaintiff's defamation claim, paragraph 61, Jansen made his statements "out of malice and ill will toward Assure, born from Assure's having rebuffed his pay-to-play demands." And, in Plaintiff's tortious interference claim, paragraphs 68 and 69, it alleges that Jansen "spoke to those companies for the purpose of sabotaging Assure's relationships with them" and "out of ill will

toward Assure." Based on the foregoing, Plaintiff's defamation and tortious interference claims are barred by the applicable statute of limitations.

Further, even if some portion of Plaintiff's tortious interference claim was timely, any damages arising from Assure's alleged reputational harm are barred by the one-year limitations period. *Campos v Oldsmobile Div, Gen Motors Corp*, 71 Mich. App. 23, 246 N.W.2d 352, 354 (1976) ("That portion of the complaint which relies upon the reactions of others and damage to his reputation sounds in defamation and is barred by the statute of limitations.").

Therefore, the Court should dismiss Plaintiff's claims as barred by the statute of limitations under Rule 12(b)(6).

### 3. The Court Should Dismiss Plaintiff's Defamation Claim Against MSU HCI Under Rule 12(b)(6) Because the Complaint Is Not Pled with Specificity.

A plaintiff seeking relief for defamation must plead "who published the defamatory statement, when it was published, and most importantly, a plaintiff must identify the precise materially false statement published." *Rouch v. Enquiere & News,* 487 N.W.2d 205, 220-221 (Mich. 1992). Accord: *Fox v. Kitch, Drutchas, Wagner, Valitutti & Sherbrook P.C.*, No. 07-10240, 2008 WL 11626313, at *8 (E.D. Mich. Feb. 6, 2008) (dismissing a slander/defamation claim where the plaintiff failed, *inter alia*, "to allege the defamatory statement, the person who made the statement, or the person to whom the defamatory statements were made."); *Davis v. Med-1 Occupational Health Servs*., No. 1:23-426, 2023 WL 5533498, at *5 (W.D. Mich. Aug. 3, 2023) (Behrens, M.J.) report and recommendation approved, No. 23-426, 2023 WL 5529782 (W.D. Mich. Aug. 28, 2023).

In *Bhan v. Battle Creek Health Sys*., 579 F. App'x 438, 446 (6th Cir. 2014), the Sixth Circuit explained further that Michigan law requires pleading "the exact language alleged to be

defamatory[.]" Accord: *Ryniewicz*, 803 F. App'x at 867 (the plaintiff must plead with "specificity by identifying the exact language that the plaintiff alleges to be defamatory.") (quoting *Ghanam v. Does*, 303 Mich. App. 522, 845 N.W.2d 128, 142 (2014)).

Thus, the allegations in *Bhan* that the defendants "published to third-parties orally and in writing numerous communications contending that the Plaintiff lacked sufficient cognitive and dexterity skills to adequately perform his functions as a critical care practitioner" did not satisfy the obligation to identify to whom the words were published or "the requirement of setting forth the exact language alleged to be defamatory" because it "merely summarizes the words alleged to be defamatory." 579 F. App'x at 447 (emphasis added); *see also Park W. Galleries, Inc. v. Glob. Fine Art Registry, LLC*, No. 08-12247, 2010 WL 742580, at *5 (E.D. Mich. Feb. 26, 2010) (dismissing defamation claim against the Dali Gallery where the complaint alleged that the Gallery "has told numerous Park West customers face-to-face, over the phone, and/or in writing that the artwork purchased from Park West is fake or not as purportedly represented by Park West"; such "general averments of defamatory activity" did not "specifically plead any statements made by the Dali Gallery and no false and defamatory words or statements are identifiable").

This pleading deficiency applies to all of Jansen's allegedly defamatory statements, because Plaintiff merely summarizes the supposed statements. In specific respect to Plaintiff's allegations about Jansen's statements to ELLKAY, Plaintiff's inferences rest solely on "information and belief." ECF No. 1, PageID.8-9, ¶¶ 41-47. Thus, Plaintiff's defamation claim fails for lack of specificity in the words allegedly used.

The lack of specificity as to whom Jansen allegedly made the statements also requires dismissal of Plaintiff's defamation claim. Instead of naming individuals, Plaintiff only states that he made statements to unidentified person(s) at ELLKAY, HC9 and Maveron. This is insufficient.

*See, e.g.*, *Gonyea v. Motor Parts Fed. Credit Union*, 480 N.W.2d 297, 299 (Mich. Ct. App. 1991) ("Mr. Major's statements to credit <u>union employees</u> that plaintiff was a thief and should not be trusted fails to state to whom publication was made"); *Coles v. Dearborn Midwest Co.,* No. 13-14450, 2014 WL 7530433, at *6 (E.D. Mich. Sept. 17, 2014), *objections overruled sub nom. Coles v. Dearborn Mid-W. Co.,* No. 13-14450, 2015 WL 163829 (E.D. Mich. Jan. 13, 2015) (allegation that defendant slandered the plaintiff <u>in a meeting</u> by stating that he was "passive-aggressive, militant, negative and abusive" did not identify the recipient of the alleged slander); *Kahlich v. City of Grosse Pointe Farms*, 120 F. App'x 580, 586 (6th Cir. 2005) ("The defamation-per-se claim fails because, among other things, Kahlich failed to 'specifically' plead to whom the individual defendants published the allegedly defamatory statements"). For this reason, Plaintiff's defamation claim must be dismissed.

Plaintiff also fails to plead <u>when</u> Jansen made certain statements. In describing what Jansen allegedly said to a "partner at Maveron," the Complaint fails to say when this occurred. ECF No. 1, PageID.7-8, ¶¶ 36-40. The same is true of Plaintiff's allegations that Jansen defamed Plaintiff to ELLKAY. ECF No. 1, PageID.8-9, ¶¶ 41-47. Thus, even if Plaintiff pled the words used and to whom they were spoken, Plaintiff's claims about Maveron and ELLKAY are not sufficiently pleaded and should be dismissed on this basis as well.

### 4. The Court Should Dismiss Plaintiff's Claim of Defamation *Per Se* Against MSU HCI Because the Facts Pled Do Not Impute the Commission of a Crime or A Lack of Chastity.

The Complaint repeatedly states that Jansen said (without describing the specific words) Assure had or was engaging in Medicare fraud and had major compliance issues. *See e.g.*, ECF No. 1, PageID.1, ¶ 1 ("Assure had committed widespread Medicare fraud and had major compliance issues"); PageID.7, ¶ 31 and PageID.12, ¶ 58 ("because Assure was committing

widespread Medicare fraud and had major compliance issues"); PageID.8, ¶ 38 ("Assure was committing Medicare fraud and had major compliance issues").

These allegations are insufficient to plead a claim of defamation per se under Michigan law. Claims in Michigan of defamation per se are "limited to those in which the false and defamatory statements regard criminality and lack of chastity," not "statements that concern a party's business, profession, or employment." *Cetera v. Mileto*, 995 N.W.2d 838, 845 (Mich. Ct. App. 2022) (emphasis added). In *Cetera*, the Court concluded that "[r]esort to defamation per se is only available when statements impute the commission of a crime or a lack of chastity." *Id*. at 846 (emphasis added). Therefore, the mere allegation of harm to Plaintiff's business reputation does not state a claim of defamation per se.

Plaintiff does not allege statements by Jansen that impute the commission of a crime. In *Marks One Car Rental, Inc. v. Auto Club Grp.* Ins. Co., 761 F. App'x 516 (6th Cir. 2019), the Sixth Circuit concluded that the alleged statements, "Marks One Collision was engaging in fraud and dishonest business practices" and "Maher Waad had a reputation of committing insurance fraud" were insufficient to merit relief under a defamation per se theory. And in *Nehls v. Hillsdale Coll.*, 65 F. App'x 984 (6th Cir. 2003), the Sixth Circuit affirmed a grant of summary judgment on the plaintiff's claim of defamation per se regarding allegations of fraud. In explaining its decision, the Court stated: "Notably, Michigan's defamation statute does not categorize fraud as defamation per se." *Nehls,* 65 F. App'x at 990–91. *See also Daneshvar v. Kipke*, 266 F. Supp. 3d 1031 (E.D. Mich. 2017) (statements by student on a website that his faculty advisor committed fraud, intellectual property theft, dishonesty, and failure to disclose conflict of interest in patenting his inventions were not defamatory per se).

In short, Plaintiff's allegations of Medicare fraud and compliance problems are insufficient to state a claim of defamation per se. Accordingly, the Court should dismiss that claim as a matter of law.

>       **5.  The Court Should Dismiss Plaintiff's Claims Against MSU HCI With Respect to Jansen's Alleged Statements to HC9 Because Plaintiff Consented to The Publication.**

Plaintiff's claim of defamation rests principally on Jansen's alleged statements to HC9. However, the Complaint shows that these alleged statements were protected by an absolute privilege. As the Sixth Circuit explained in *Romero v. Buhimschi*, 396 F. App'x 224 (6th Cir. 2010):

> Michigan courts have repeatedly recognized that a publication is absolutely privileged if the defamed party <u>invited or consented</u> to the publication. . . . The privilege can be both express or implied. *Ramsey,* 2008 WL 3541206 at *4 (quoting 50 *Am. Jur. 2d Libel & Slander* § 254). <u>An absolutely privileged communication is not subject to a defamation claim even if the statement was false or malicious</u>. *Oesterle v. Wallace,* 272 Mich.App. 260, 725 N.W.2d 470, 474 (2006) (emphasis added).

*Romero,* 396 F. App'x 224 at 236 (underscoring added).[14]

Here, Plaintiff's Complaint acknowledges that its Chief Operating Officer *asked* Jansen to give a reference to HC9, and that Jansen agreed to do so. ECF No. 1, PageID.6, ¶ 30. Although Plaintiff makes the conclusory statement that it "did not consent to Jansen's making false statements about Assure," *id.* at PageID.12, ¶ 60, that is immaterial. *Romero, supra.* In *Romero,* the plaintiff physician brought a defamation claim against Wayne State University, to which he had relocated following an authorship dispute at his prior institution. Because he *asked* University

---

[14] In *Jaafar v. Sabon*, No. 229992, 2002 WL 1482605, at *1 (Mich. Ct. App. July 9, 2002), the Court of Appeals explained: "The privilege applies if '(1) there was either express or implied consent to the publication; (2) the statements were relevant to the purpose for which consent was given; and (3) the publication of those statements was limited to those with a legitimate interest in their content.' 50 Am Jur 2d, Libel & Slander, § 272, p 538. Both the interpretation of a release and whether a privilege applies in a defamation action are questions of law for the court to decide. *Cole, supra* at 13; *Couch v. Schultz,* 193 Mich App 292, 294; 483 NW2d 684 (1992)."

officials to contact the journal about the authorship dispute, the district court found implied consent. 396 F. App'x at 236. The Sixth Circuit agreed. *Id.*

In *Heike v. Guevara*, No. 09-10427, 2010 WL 538300 (E.D. Mich. Feb. 9, 2010), *aff'd*, 519 F. App'x 911 (6th Cir. 2013), the court held that the plaintiff student basketball player gave implied consent to defamation when she requested an Appeals Committee hearing following her dismissal from the team because that request "was effectively a request for Coach Guevara to explain the reasons for not renewing Plaintiff's scholarship." 2010 WL 538300, at *5. *See also Schechet v. Kesten,* 3 Mich. App 126, 130-134; 141 N.W.2d 641 (1966) (absolute privilege of consent applied to allegedly defamatory statements made by the hospital's surgery department chairman in response to the plaintiff physician's letter asking for a written "specific list of charges" that led to the action taken against the physician); *Hollowell v. Career Decisions, Inc.,* 100 Mich. App. 561, 298 N.W.2d 915, 922 (1980) (because the plaintiff "requested the board of directors to discuss defendant Brown's dissatisfaction with her performance," she had "requested the very conversation which she alleges slandered her").

Here, Plaintiff alleges that it requested Jansen to give a reference to HC9, and that Jansen agreed to do so. Accordingly, Plaintiff consented to the alleged defamation. For this reason, too, the Court should dismiss Plaintiff's claim of defamation with respect to HC9.

### 6.  The Court Should Dismiss Plaintiff's Tortious Interference Claim Against MSU HCI For Various Independent, Additional Reasons.

Plaintiff's tortious interference claim fails to state a claim on which relief can be granted for various additional, but independent, reasons.

A claim for tortious interference with a business relationship or expectancy must plead and prove: "(1) the existence of a valid business relationship or expectancy; (2) knowledge of the relationship or expectancy by the defendant; (3) intentional interference by the defendant which

24

induces or causes a breach or termination of the relationship or expectancy; and (4) damage to the plaintiff." *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co*., 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003); *Visions Auto Glass, Inc. v. Safelite Sols., Inc.,* No. 10-00791, 2012 WL 13184337, at *5 (W.D. Mich. July 13, 2012) (Maloney, J.).

### a.  ELLKAY: Plaintiff Lacks Standing

Plaintiff lacks standing to assert a tortious interference claim against MSU HCI with regard to ELLKAY.[15] The Complaint alleges that Plaintiff's <u>subsidiary</u>, Assure Health Ventures, LLC, operated a joint venture with Higi Health Holdings, LLC. ECF No. 1, PageID.3, ¶10.[16] According to the Complaint, "Assure's JV partner, Higi [Health Holdings, LLC], had a long-term contractual relationship with ELLKAY." ECF No. 1, PageID.8, ¶ 42 (emphasis added). Plaintiff characterizes its own relationship with ELLKAY as being "through the JV," *id.* at PageID.14, ¶ 67, although as noted the relationship was with Higi Health Holdings, LLC, which Plaintiff's subsidiary partnered with in the JV. ECF No. 1, PageID.3, ¶ 10. Further, the Complaint states that the ELLKAY's services were provided "to the JV" and that ELLKAY's services were "vital to the JV." *Id*. at ¶¶ 67, 70 (emphasis added). In other words, Plaintiff alleges that it had a relationship with ELLKAY because a separate entity—which Plaintiff's subsidiary co-ran a joint venture with—had a contract with ELLKAY.

---

[15] MSU HCI does not believe this presents a question of standing in the Article III sense, but a question much like contractual standing, which is different from constitutional standing. *See, e.g., Slorp v. Lerner, Sampson & Rothfuss,* 587 F. App'x 249, 254 (6th Cir. 2014) (distinguishing Article III standing from state law contractual "standing"). However, in the alternative, this claim should be dismissed for lack of Article III standing under Rule 12(b)(1). *Republican Nat'l Comm. v. Benson*, 754 F. Supp. 3d 773, 783 (W.D. Michigan 2024) ("Whether a party has standing is an issue of the court's subject-matter jurisdiction under Rule 12(b)(1)").

[16] The joint venture was Assure Health Care Everyday, LLC. *Id*.

The Complaint does not allege that *Plaintiff* had the business relationship or expectancy with ELLKAY. Instead, the relationship was with a subsidiary's JV partner. Therefore, Plaintiff cannot sue for tortious interference with ELLKAY. *Nicholson v. Ticketmaster*, 42 F. App'x 696, 698 (6th Cir. 2002) ("As Nicholson was not a party to the contracts on a personal basis, he has no standing to raise a breach of contract claim or tortious interference of contract claim"). For this reason, Plaintiff cannot seek relief for tortious interference with its alleged business relationship or expectancy with ELLKAY.

### b. Maveron and ELLKAY: Failure to Plead Knowledge by Defendant Jansen

Plaintiff's claims that MSU HCI tortiously interfered with its business relationships or expectancies with ELLKAY and Maveron fail because the Complaint does not set forth factual allegations that Jansen <u>knew</u> of the alleged relationships or expectancies.[17] The failure to plead such facts is fatal to Plaintiff's claim. *See, e.g., Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1152 (W.D. Mich. 2019) (dismissing tortious interference claim in part because the plaintiff failed to allege "that the House Defendants knew of any specific business relationships that their investigation would damage"), *aff'd*, 831 F. App'x 161 (6th Cir. 2020). *See also Visions Auto Glass*, 2012 WL 13184337, at *5.

First, with regard to ELLKAY, the Complaint alleges that Plaintiff's subsidiary, Assure Health Ventures, LLC, had a Joint Venture ("JV") with a partner called Higi Health Holdings, LLC. ECF No. 1, PageID.3, ¶ 10. The Complaint claims that, through that JV, Plaintiff had a "long-term contractual relationship" with ELLKAY. ECF No. 1, PageID.8, ¶ 42. The Complaint further

---

[17] In the case of Maveron, Plaintiff alleges that it had a "valid expectancy of a continuing business relationship with Maveron." ECF No. 1, PageID.13, ¶ 66. In the case of ELLKAY, Plaintiff calls it a "business relationship" and says there were "repeated offers to Assure to enter into a contractual business relationship with Assure." *Id.* at PageID.14, ¶ 67.

states that Jansen caused ELLKAY "not to continue working towards a contract for the continuation of services." *Id*. at ¶ 46. However, the Complaint contains no factual allegations that Jansen knew about a specific business relationship between ELLKAY and the JV (or Plaintiff), let alone the JV's supposed "long-term contractual relationship" with ELLKAY. This does not plead facts of Jansen's knowledge of a business relationship or expectancy. Importantly, "<u>knowledge of generalized business dealings</u>" are not sufficient. *Varlesi v. Wayne State Univ.*, 909 F. Supp. 2d. 827, 850 (E.D. Mich. 2012) (emphasis added). Accordingly, Plaintiff's claim that MSU HCI tortiously interfered with Plaintiff's business relationship or expectancy with ELLKAY should be dismissed.

Similarly, Plaintiff alleges that Maveron "demonstrated substantial interest in investing in Assure" and had "coordinated three partner meetings with Assure, a highly accelerated timeline of engagement relative to the typical venture capital process." ECF No. 1, PageID.8-9, ¶ 37. However, again, Plaintiff pleads no facts that Jansen <u>knew</u> of Plaintiff's supposed business expectancy with Maveron, let alone its "substantial interest" in investing in Plaintiff. Instead, all the Complaint states is that a Maveron partner "reached out to Jansen to inquire about Assure's work with the Company." *Id*. at ¶ 38. That too does not plead facts of Jansen's knowledge of a business relationship or expectancy. Thus, Plaintiff's claim that MSU HCI tortiously interfered with Plaintiff's business relationship or expectancy with Maveron should be dismissed.

### c.  Maveron: Plaintiff Does Not Allege a Valid Expectancy

Plaintiff's claim that MSU HCI tortiously interfered with Plaintiff's business relationship with Maveron suffers from another fatal flaw. The Complaint does not allege the nature of the expectancy except, as noted, that Maveron demonstrated "substantial interest" in an investment. However, where there is no contract, a business "expectancy must be a reasonable likelihood or

probability, not mere wishful thinking." *First Pub Corp v Parfet*, 246 Mich. App. 182, 631 N.W.2d 785, 795 (2001).

In *Cedroni Assocs. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*, 821 N.W.2d 1, 6 (Mich. 2012), the Michigan Supreme Court rejected a claim for tortious interference with a business expectancy where the plaintiff contractor was the lowest bidder for the school district's construction bid, but state law gave the school district <u>discretion</u> to reject bids. *See also Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1061 (6th Cir. 1994), *remanded on other grounds,* No 92-2129 (6th Cir Feb 14, 1995) (plaintiff failed to show that he had "expectancy of future business relations with … customers with which Amoco might possibly have interfered"). Plaintiff does not plead factual allegations that it had a reasonable likelihood or probability of Maveron <u>actually</u> investing in Plaintiff. Therefore, Plaintiff's claim that MSU HCI tortiously interfered with Plaintiff's business relationship or expectancy with Maveron should be dismissed.

### 7.  MSU HCI Adopts Arguments Advanced by Jansen in His Motion

In a separate Motion, Jansen seeks dismissal of all claims against him. Although the grounds for dismissal advanced by Jansen will overlap with those presented in this Motion, MSU HCI adopts and incorporates those here. Moreover, MSU HCI notes that claims made against Jansen as an agent of MSU HCI would require dismissal of those same claims against MSU HCI because the relief sought against MSU HCI rests on a theory of vicarious liability.[18]

## IV.   CONCLUSION

As shown above, Rule 12(b)(6) requires dismissal of Plaintiff's claims for seven independent reasons. First, the claims seek relief from MSU HCI for statements allegedly made

---

[18] *See e.g., Al-Shimmari v. Detroit Med. Ctr.*, 731 N.W.2d 29, 37-38 (Mich. 2007) (where a tort claim against an agent is dismissed in an adjudication on the merits, the principal cannot be vicariously liable).

by Jansen that could only be characterized as actions taken outside the scope of his employment. Second, the claims are barred by the statute of limitations. Third, Plaintiff fails to plead with specificity the alleged defamatory words used, to whom they were spoken, and/or when they were made. Fourth, the claim of defamation *per se* does not allege that Jansen's statements imputed the commission of a crime or a lack of chastity. Fifth, the Complaint pleads facts demonstrating that Plaintiff consented to Jansen's alleged statements to HC9 Ventures, LLC, thereby meriting the defense of absolute privilege. Sixth, Plaintiff's claim of tortious interference with business relations lacks the factual allegations necessary to sustain it. Finally, MSU HCI adopts and incorporates by reference those arguments made by Jansen for dismissal of claims against him.

For these reasons, Defendant MSU Health Care, Inc. respectfully requests that this Honorable Court dismiss Plaintiff's Complaint, with prejudice, and award Defendant its costs and attorney's fees incurred in defending this matter.

<div style="margin-left:40%">

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (P57145)
Attorneys for Defendant MSU Health Care
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 740-7505
jrabin@hallrender.com

</div>

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the word limit of L. Civ. R. 7.2(b)(i) because, excluding the parts exempted by L. Civ. R. 7.2(b)(i), it contains 8,317 words. The word count was generated using Microsoft Word for Microsoft 365 MSO.

Respectfully submitted,

HALL RENDER KILLIAN HEATH & LYMAN, PC

/s/ Jonathon A. Rabin
Jonathon A. Rabin (57145)
Attorneys for Defendant MSU Health Care, Inc.
101 W. Big Beaver Road, Suite 745
Troy, MI 48084
(248) 740-7505
jrabin@hallrender.com

30